972 F.2d 328
 61 USLW 2218, Fed. Sec. L. Rep. P 97,013,
23 Bankr.Ct.Dec. 721,
Bankr. L. Rep. P 74,912
 In re GOVERNMENT SECURITIES CORPORATION, Debtor.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Defendant-Appellant,
v.
John R. CAMP, Jr., Trustee, Securities Investor Protection
Corporation, Plaintiffs-Appellees.
 No. 90-5356.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 14, 1992.
 
 Carl K. Hoffman, Miami, Fla., plaintiff-appellant.
 Neal B. Shniderman, Miami, Fla., for Camp.
 Theodore H. Focht, Josephine Wang, SIPC, Washington, D.C., for Securities Investor Protection Corp.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 In this case, we affirm the district court's holding that the Bankruptcy Code anti-termination provision, 11 U.S.C. § 541(c)(1)(B) (1988), applies to a liquidation proceeding under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa-78lll (1988) (SIPA), to invalidate a fidelity bond clause that purports to terminate liability under the bond automatically upon the takeover of the bonded entity by a receiver or other liquidator.
 
 I.
 
 2
 The appellant, National Union Fire Insurance Company of Pittsburgh, PA. (NUFIC), issued a fidelity bond in February 1987 to the Government Securities Corporation (GSC), a securities broker, to protect it against losses resulting from, among other things, dishonest acts of its employees. Section 12(c) of the bond purports to terminate or cancel the bond "upon the taking over of [GSC] by a receiver or other liquidator."
 
 
 3
 On May 12, 1987, the Securities Investor Protection Corporation (SIPC) applied to the United States District Court for the Southern District of Florida for an order placing GSC into SIPA liquidation proceedings because of substantial shortfalls in GSC's accounts. That same day, GSC consented to the entry of an order appointing a trustee for the liquidation of its business pursuant to SIPA. The district court ordered the GSC liquidation to commence under SIPA, appointed John R. Camp, Jr. (Trustee) as trustee to administer the proceeding, and referred the case to the Bankruptcy Court for the Southern District of Florida.
 
 
 4
 On June 2, 1987, the Trustee, acting on behalf of GSC, notified NUFIC of a possible loss arising from employee dishonesty, and on December 1, 1987, filed a proof of loss. In response, NUFIC refused coverage under the bond on the ground that by virtue of section 12(c), the bond terminated on May 12, 1987, upon the appointment of the Trustee to oversee GSC's liquidation.
 
 
 5
 In August of 1988 the Trustee initiated an adversary proceeding against NUFIC within the SIPA liquidation proceeding, seeking a declaration of the rights of the parties under the bond. The Trustee argued that NUFIC remained liable on the bond despite the commencement of the SIPA liquidation proceeding because the bond's automatic termination provision was invalidated by 11 U.S.C. § 541(c)(1)(B), the Bankruptcy Code anti-termination provision, which is made applicable to SIPA liquidation proceedings by 15 U.S.C. § 78fff(b). Section 541(c)(1)(B) forbids the courts from enforcing contract provisions that are conditioned upon the financial condition of the debtor. That section provides in relevant part:
 
 
 6
 (c)(1) ... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement ...
 
 
 7
 (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.
 
 
 8
 11 U.S.C. § 541(c)(1)(B).
 
 
 9
 The Trustee argued that SIPA proceedings import this, among other Bankruptcy Code provisions, through 15 U.S.C. § 78fff(b) which provides: "To the extent consistent with the provisions of [SIPA], a [SIPA] liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]."
 
 
 10
 The bankruptcy court agreed, and accordingly entered judgment for the Trustee reasoning that:
 
 
 11
 the Trustee's rights under the bond constitute and constituted property of the estate under Section 541 of the [Bankruptcy] Code and the automatic termination provision contained in Section 12(c) of the bond is and was ineffective by virtue of Section 541(c)(1)(B) notwithstanding the commencement of the liquidation of GSC under S.I.P.A. and the appointment of Mr. Camp as Trustee. The rights, powers, and protection given to a bankruptcy trustee by the [Bankruptcy] Code are adopted by reference into S.I.P.A., 15 U.S.C. Sections 78fff(b), 78fff-1(a).
 
 
 12
 In re Government Sec. Corp., 101 B.R. 343, 346-47 (Bankr.S.D.Fla.1989).
 
 
 13
 NUFIC appealed the bankruptcy court's decision to the district court, and that court affirmed. The district court found that "11 U.S.C. Section 541(c)(1)(B) applies to SIPA liquidation proceedings, thereby invalidating Section 12(c), the automatic termination clause of the bond NUFIC issued to GSC." In re Government Sec. Corp., 111 B.R. 1007, 1010 (S.D.Fla.1990). NUFIC then lodged this appeal. We agree with the district court and therefore affirm.
 
 II.
 
 14
 The sole issue presented in this appeal is whether section 541(c)(1)(B) of the Bankruptcy Code applies in a SIPA liquidation proceeding. NUFIC makes several arguments contending that the bond provision terminating coverage upon a takeover should not be affected by section 541(c)(1)(B). We reject them all.
 
 
 15
 First, NUFIC posits that the plain meaning of section 541(c)(1)(B) demonstrates that it does not apply in a SIPA proceeding.[1] It argues that since this section speaks only of cases commenced under title 11, and not of cases commenced under title 15,[2] this section does not apply to the latter. In effect, NUFIC argues that in order to apply to a SIPA proceeding, a Bankruptcy Code provision must state specifically that it applies.
 
 
 16
 Apart from misreading the language of section 541(c)(1)(B), this argument completely ignores section 78fff(b) which plainly states that SIPA liquidation proceedings shall be conducted in accordance with certain provisions of title 11, including Chapter 5 in which section 541(c)(1)(B) is located. NUFIC's interpretation of section 541(c)(1)(B) would render section 78fff(b) meaningless. There would be no need for section 78fff(b) if each Bankruptcy Code section that applied in a SIPA proceeding had to indicate it. It is a standard rule of construction that "a court should interpret a statute so as to give effect to each of its provisions." United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1502 (11th Cir.1991) (citing United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955)). We cannot construe section 541(c)(1)(B) such that section 78fff(b), an integral component of SIPA, is rendered useless. We thus agree with the lower courts in holding that section 78fff(b) specifically incorporates section 541(c)(1)(B) into a SIPA proceeding.[3]
 
 
 17
 Similarly, NUFIC contends that Congress' amending of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), in 1982 to make it applicable upon the filing of a SIPA proceeding,[4] but neglecting to amend section 541(c)(1)(B) shows that Congress did not intend that section 541(c)(1)(B) apply in a SIPA proceeding. This argument too must fail. Apart from the technical reasons for section 362(a)'s amendment,[5] this argument suffers from the fatal flaw discussed above. That is, NUFIC's contention also requires each Bankruptcy Code provision specifically to state that it applies in a SIPA proceeding. We reiterate that this reasoning renders section 78fff(b) essentially meaningless, and is unacceptable.
 
 
 18
 Finally, NUFIC claims that the public policy and purpose of SIPA differ substantially from the policy and purpose of liquidation under the Bankruptcy Code. This distinction, NUFIC contends, supports the proposition that Congress intended to limit application of section 541(c)(1)(B) to a Bankruptcy Code liquidation. Specifically, the customer protection aspect of SIPA renders the proceeding so different from a proceeding in ordinary bankruptcy that section 541(c)(1)(B) cannot be deemed to apply.
 
 
 19
 This argument is inapposite to the intent of SIPA. The purpose of SIPA is to return to customers of brokerage firms their property or money. 15 U.S.C. § 78fff(a) provides that "[t]he purposes of a liquidation proceeding shall be ... to deliver customer name securities to or on behalf of the customers of the debtor ...; and ... to distribute customer property and ... otherwise satisfy net equity claims of customers...." Congress wanted more, not fewer, assets available for customers of brokerage firms in financial distress. It makes no sense to suggest that Congress intended that the SIPA trustee have less power than an ordinary bankruptcy trustee to gather assets into the debtor's estate. It is entirely consistent with SIPA that the Trustee is able to recover any claims GSC has on the bond, in addition to any monies that GSC will receive for their customers from the SIPC. The two entities as potential sources of money are not mutually exclusive, but they are different forms of insurance upon which GSC may collect, create an estate, and distribute to creditors.[6]
 
 III.
 
 20
 For the foregoing reasons, the order of the district court is AFFIRMED.
 
 
 21
 IT IS SO ORDERED.
 
 
 
 [1]
 In addition, the appellant contends that the plain meaning of § 78fff(b) of SIPA shows that § 541(c)(1)(B) of the Bankruptcy Code is not incorporated into a SIPA liquidation proceeding. NUFIC claims that § 78fff(b) incorporates only the procedural and not the substantive aspects of the Bankruptcy Code insofar as they are consistent with SIPA. This argument is entirely meritless. The plain language of § 78fff(b) makes no such distinction, and explicitly incorporates Chapters 1, 3, 5, and subchapters I and II of Chapter 7 of the Bankruptcy Code
 
 
 [2]
 The appellant highlights the phrases "commencement of a case under [title 11]," and "taking possession by a trustee in a case under [title 11]" in § 541(c)(1)(B) to make this argument
 
 
 [3]
 This reasoning answers two other arguments that NUFIC puts forth. First, NUFIC claims that the legislative history of § 541(c)(1)(B) shows that the section was not to apply to a SIPA proceeding. It cites the Senate Report which states that "[t]he provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property." S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5869. This quotation does not support the weight of NUFIC's argument
 Further, NUFIC asserts that the legislative history of § 541(c)(1)(B) is "in derogation of the common law," requiring the statute to be strictly construed. No matter how strictly we construe § 541(c)(1)(B), it cannot entirely negate the effect of § 78fff(b).
 
 
 [4]
 Section 362(a) now provides:
 Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of [title 11], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities....
 11 U.S.C. § 362(a) (1988).
 
 
 [5]
 The legislative history indicates that 11 U.S.C. § 362(a) (1988) was amended for technical clarification in order to protect further the securities consumer in the event of a brokerage house liquidation. Congress clearly meant to increase, not decrease, protection to the consumer and the availability of the Bankruptcy Code in a SIPA proceeding. See H.R. 420, 97th Cong., 2d Sess. (1982), reprinted in 1982 U.S.C.C.A.N. 583
 
 
 [6]
 NUFIC also contends that as a policy matter SIPC should be considered analogous to the FDIC and FSLIC, and cites cases involving those institutions where similar bond termination clauses have been upheld. See, e.g., Sharp v. Federal Sav. & Loan Ins. Corp., 858 F.2d 1042 (5th Cir.1988); Continental Ins. Co. v. Federal Sav. & Loan Insur. Corp., No. CV 84-9708 AHS (C.D.Cal.1986). That analogy is inapposite; the cited cases do not involve the Bankruptcy Code, and those institutions are not debtors in title 11 bankruptcy proceedings